1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11  JUAN VILLEGAS,                                    CASE NO. 03 CV 2133

12                                    Plaintiff,      **ORDER GRANTING MOTION**
                                                      **FOR ATTORNEYS' FEES**
13           vs.

14  ERIC HACKETT, an individual, and CITY
    OF CALEXICO,
15
                                   Defendants.
16

17          Plaintiff Juan Villegas moves for attorneys' fees and litigation expenses under 42 U.S.C. §

18  1988. Defendants Eric Hackett and the City of Calexico oppose the motion. For the reasons set forth

19  below, the court **GRANTS** the motion and awards a reduced amount of fees and expenses.

20  **I.      BACKGROUND**

21          In this § 1983 action, Plaintiff alleged several state and federal civil rights claims against

22  officer Eric Hackett and the City of Calexico. The claims arose out of the arrest of Villegas at his

23  home in Calexico on December 3, 2002. After a four-day trial on Plaintiff's § 1983 claim for unlawful

24  arrest, the jury returned a verdict of $91,000 against defendant Hackett.

25          Plaintiff now seeks $280,962 in attorneys' fees for counsel Michael Marrinan, $25,050 in

26  attorneys' fees for prior counsel Keith Rutman, and $10,749 in litigation expenses, for a total award

27  of $316,761. Defendants claim that the court should not award Plaintiff full attorneys' fees and

28  expenses.

1    **II.    DISCUSSION**

2         **A.    Legal Standards**

3         The court has discretion to award attorneys' fees and costs to a prevailing civil rights plaintiff.

4    42 U.S.C. § 1988(b).  Such an award may include "out-of-pocket expenses incurred by an attorney

5    which would normally be charged to a fee paying client."  Chalmers v. City of Los Angeles, 796 F.2d

6    1205, 1216 n.7 (9th Cir. 1985), amended, 808 F.2d 1373 (9th Cir. 1987); see also Davis v. Mason

7    County, 927 F.2d 1473, 1488 (9th Cir. 1991) (affirming award of travel expenses).

8         Reasonableness is the benchmark for attorneys' fees under § 1988.  See 42 U.S.C. § 1988(b);

9    Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  Courts follow a two-part "lodestar/multiplier"

10   approach in determining reasonable fees.  See id. at 433; Ballen v. Redmond, 466 F.3d 736, 746 (9th

11   Cir. 2006) (citing Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996)).  Under this

12   approach, the court first calculates the presumptively-reasonable lodestar figure by multiplying the

13   hours reasonably spent on the litigation by a reasonable hourly rate.  Hensley, 461 U.S. at 433

14   (moving party must submit evidence supporting lodestar amount); Ballen, 466 F.3d at 746.  The court

15   should determine the reasonable hourly rate in light of "the rate prevailing in the community for

16   similar work performed by attorneys of comparable skill, experience, and reputation."  Chalmers, 796

17   F.2d at 1210-11 (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).

18        Second, the court may adjust the lodestar figure upward or downward based on those factors

19   listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975), cert. denied, 425 U.S.

20   951 (1976) (the "Kerr factors"), which are not subsumed in the lodestar calculation.  See Hensley, 461

21   U.S. at 434 n.9;  Cunningham v. County of Los Angeles, 879 F.2d 481, 484 (9th Cir. 1988).  The Kerr

22   factors include:

23        (1) [T]he time and labor required, (2) the novelty and difficulty of the questions
          involved, (3) the skill requisite to perform the legal service properly, (4) the
24        preclusion of other employment by the attorney due to acceptance of the case,
          (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time
25        limitations imposed by the client or the circumstances, (8) the amount involved
          and the results obtained, (9) the experience, reputation, and ability of the
26        attorneys, (10) the "undesirability" of the case, (11) the nature and length of the
          professional relationship with the client, and (12) award in similar cases.

27

28   Kerr, 526 F.2d 67, 69-70 (9th Cir. 1975) (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d

714 (5th Cir. 1974)).[1]  The <u>Kerr</u> factors offer guidance but are neither exclusive nor exhaustive. <u>Chalmers</u>, 796 F.2d at 1211 ("What remains important is that the district court articulate with sufficient clarity the manner in which it makes its determination of a reasonable hourly rate and the number of hours which should reasonably be compensated.").  The Supreme Court has also held that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" <u>Farrar v. Hobby</u>, 506 U.S. 114 (1992) (quoting <u>Hensley</u>, 461 U.S. at 436).

**B.     Fees**

   **1.     Lodestar Calculation**

Plaintiff argues that the court should use the following figures to calculate the lodestar amount:

| <u>**Attorney**</u> | <u>**Rate**</u> | <u>**Hours**</u> | <u>**Total**</u> |
|---|---|---|---|
| Marrinan | $430 | 653.4 | $280,962 |
| Rutman | $375 | 66.8 | <u>$25,050</u> |
| | | | **$306,012** |

Marrinan's 653.4 hours include 634.6 for all work through the filing of the motion for fees, and 18.8 for times spent preparing the reply brief.

   **a.     Hourly Rates**

In support of the hourly rates requested, Plaintiff submits declarations of Marrinan and Rutman describing their years of legal experience.  Marrinan has practiced law for 27 years.  Marrinan has extensive experience and success in civil rights litigation and is highly-regarded in the San Diego legal community as an exceptional civil rights trial lawyer who has been honored by bar associations for his work in this area.  (<u>See</u> Decl. of M. Marrinan.)  Rutman has practiced law for 19 years.  Since 1994, 85 percent of Rutman's practice has been devoted to criminal defense and police-misconduct civil rights cases.  (Decl. of K. Rutman at 2.)  Both attorneys state that civil rights cases are difficult and risky to litigate.  Marrinan notes that "few attorneys are willing to undertake police misconduct civil rights cases," especially because such cases "generally must be pursued on a contingent fee

---

[1]The Supreme Court has held that the lodestar calculation fully reflects the novelty and complexity of the legal issues, and ordinarily also subsumes the quality of the representation and the special skill and experience of counsel. <u>Blum v. Stenson</u>, 465 U.S. 886, 898-99 (1984); <u>Chalmers</u>, 796 F.2d at 1212.

basis." (Decl. of M. Marrinan at 4.)

Plaintiff also submits several declarations in support of his claim that $430 for Marrinan and $375 for Rutman are the prevailing rates in San Diego for services of comparably skilled, experienced, and reputable lawyers.  (See Decls. of G. Garrison, C. Bird, M. Crowley.)  Attorney Greg Garrison states that he received attorneys' fees at a rate of $350 per hour in 2004 in a § 1983 case tried in Superior Court, at which time he had practiced law for 11 years. (Decl. of G. Garrison at 2.)  Garrison now charges $400 per hour for his services, which include trying civil rights cases.  He believes that the prevailing rate for attorneys comparable to Marrinan is at least $450 per hour.  (Id.)  He also concurs with Marrinan's observations regarding the difficulties involved in representing plaintiffs in civil rights cases. (Id. at 1.)  Attorney Charles Bird, a partner at Luce, Forward, Hamilton and Scripps, LLP, who has practiced law in San Diego since 1974, stated in September 2007 that he receives $480 per hour for his work. (Decl. of C. Bird at 2.)  Attorney Michael Crowley, who has been "involved" in civil rights actions in San Diego for more than 20 years, also states that $430 per hour is an appropriate rate for Marrinan.  Both Garrison and Crowley believe that Marrinan is the premier civil rights attorney in San Diego.  None of the declarants refers specifically to Rutman.

Defendants raise two primary arguments against the requested rates.  First, they claim that the rates are inappropriate because Plaintiff sought lower fees in a January 3, 2005 settlement demand letter written "in light of the upcoming settlement conference." (Opp'n at 9; Decl. of D. Garvin, Exh. A.)  In that letter, Marrinan represented that attorneys' fees to date for his time and Rutman's time were "approximately $72,500.00." (Decl. of D. Garvin, Exh. A.)  Defendants claim that this figure equates to $275 per hour for Rutman (for 66.8 hours) and $350 per hour for Marrinan (for 158.1 hours).  The court notes that the demand letter does not include any breakdown of hours and rates. Defendants conclude that Villegas is now "judicially estopped" from claiming higher rates.

As Plaintiff responds, however, settlement discussions other than the formal Rule 68 offer (discussed below) are inadmissible.  See Civ. L. R. 16.3(h) ("The settlement conference will be off the record, privileged and confidential, unless otherwise ordered by the court."); Fed. R. Evid. 408 (offers to compromise not admissible "to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount"); Ortiz v. Regan, 980 F.2d 138, 140 (2d Cir. 1992) (A district

1   court should not rely on informal negotiations and hindsight to determine whether further litigation

2   was warranted and, accordingly, whether attorney's fees should be awarded."). Furthermore, as

3   Plaintiff also argues (see Reply at 7-8), the court should determine the reasonable rate based on current

4   market rates rather than prevailing rates at the time the services were rendered. See Missouri v.

5   Jenkins, 491 U.S. 274, 283-84 (1989) ("[A]n appropriate adjustment for delay in payment – whether

6   by the application of current rather than historic hourly rates or otherwise – is within the

7   contemplation of [§ 1988]."). The court therefore rejects Defendants' estoppel argument.

8         Second, Defendants argue that the claimed rates do not reflect the prevailing market rates.

9   Defendants claim that Plaintiff fails to submit orders from relevant prior cases and that Garrison's

10   declaration constitutes the only relevant evidence. Among other arguments, Defendants claim that

11   "it is common knowledge market rates for competent and experienced trial attorneys top out at a given

12   level, regardless of the years of experience." (Opp'n at 10.) Thus, the $350 per hour award received

13   by Garrison in 2004 represents a ceiling. The court disregards this unsupported assertion. Defendants

14   argue further that the "typical, straightforward" nature of the instant case merits only a $275 rate for

15   both attorneys. Plaintiff responds that Defendants have provided no evidence contradicting the

16   declarations submitted by Plaintiff to establish the prevailing market rates. See Chalmers, 796 F.2d

17   at 1214-15 (plaintiff had presented sufficient evidence and defendant provided no contrary affidavits).

18         Based on the evidence provided by Plaintiff and the lack of compelling evidence offered by

19   Defendants, the court finds $430 per hour to be a reasonable rate for Marrinan. Plaintiff lacks the

20   same degree of support for his request for $375 per hour for Rutman, who represented Plaintiff only

21   in the incipient stages of the case. Moreover, the difference between $430 per hour for Marrinan and

22   $300 per hour for Rutman represents a reasonable incremental increase reflecting the stature and

23   experience of Marrinan in the community of civil rights attorneys. The court therefore finds $300 per

24   hour to be a reasonable rate for Rutman.[2]

25         **b.**     **Number of Hours**

26         In support of his estimate of the number of hours worked, Plaintiff submits the billing records

27   of Marrinan and Rutman. Plaintiff seeks compensation for every hour billed by his attorneys.

28

      [2]The court also rejects Defendants' evidentiary objections as unfounded. (See Doc. no. 142.)

1  Defendants take issue with several entries but do not challenge the bulk of the hours claimed.

2          First, Defendants claim that Rutman inappropriately rounded up each entry by 0.1 hours.

3  (Opp'n at 11.) They claim that the court should deduct at least 3.5 hours resulting from this rounding

4  up. Rutman replies that this is a common billing practice. Nevertheless, Rutman has not offered a

5  compelling rationale other than to say the practice is typical. The court agrees with Defendants and

6  reduces his hours to eliminate this inflation.

7          Defendants also argue that Rutman does not deserve compensation for 6.5 hours spent drafting

8  the complaint after researching the causes of action and reviewing the criminal file and trial

9  transcripts. (Opp'n at 11.) They claim that, in light of Rutman's experience and the lack of novelty

10  in the claims alleged, Rutman should have spent no more than two hours drafting the complaint.

11  Rutman responds that the 6.5 hours included time spent researching legal issues and ensuring that the

12  statement of facts was accurate. The court finds that 6.5 hours is reasonable and denies Defendants'

13  request for a reduction.

14          Defendants further claim that the court should reduce the number of hours to account for

15  services performed for Maria Marquez, a former plaintiff. Marquez is Plaintiff's mother. She

16  ultimately dismissed her claim and waived costs. Defendants seek a reduction of 25 percent to

17  account for time spent representing Marquez. Plaintiff responds that Marquez was a tangential

18  plaintiff and that her claims overlapped entirely with Plaintiff's claims. Marrinan identifies 1.2 hours

19  of work he performed exclusively for Marquez. (Supp. Decl. of M. Marrinan at 2.) Rutman also

20  identifies approximately 1.4 hours of work he performed exclusively for her. (Supp. Decl. of K.

21  Rutman at 2 ¶ 4 (identifying time spent responding to discovery requests).) Because Plaintiff correctly

22  characterizes Marquez as a tangential plaintiff who raised no independent grounds for relief, the court

23  deducts only the hours identified by Marrinan and Rutman or otherwise determined by the court, and

24  denies Defendants' request to reduce the total hours by 25 percent.

25          In addition to the issues raised by Defendants, the court's review of the billing records

26  highlights another area suitable for reductions. Rutman discontinued his representation during the

27  early stages of the case, when he transferred to a new law firm. As a result, Marrinan had to spend

28  a substantial number of hours becoming familiar with the case. Rutman was primarily responsible for

researching and filing the complaint, whereas Marrinan ultimately performed the bulk of the work in bringing the case to trial. In essence, Marrinan had to duplicate the early efforts of Rutman – except for researching and filing the complaint – as though he, Marrinan, had the case from its very inception. Accordingly, the court awards fees to Rutman for time spent researching and filing the complaint, and declines to award fees to Rutman for all other entries. See Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1286-87 (9th Cir. 2004) ("Courts must exercise discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication."). Without this reduction Defendant would, in effect, be liable for double-billing to the extent Marrinan's and Rutman's work overlapped.

Based on this discussion, the court finds that Marrinan shall be awarded fees for 652.2 hours of work. This figure reflects the 653.4 hours originally requested, reduced by 1.2 hours performed exclusively for Marquez. At $430 per hour, the lodestar figure for Marrinan is $280,446. The court further finds that Rutman shall be awarded fees for 19.3 hours of work. This figure includes the following billing entries: 1.4 hours on June 10, 2003; 2.4 hours on June 25, 2003; 0.9 hours on August 2, 2003; 3.4 hours on September 23, 2003; 4.9 hours on October 21, 2003; 2.9 hours on October 23, 2003; and 3.4 hours on October 29, 2003. At $300 per hour, the lodestar figure for Rutman is $5,790.

### 2.    **Kerr** Factors

The parties do not address the Kerr factors as such. They do address some of the factors in their general arguments regarding rates charged and hours billed. The following analysis applies.

1. Time and labor required: To the extent this factor is not subsumed in the lodestar calculation, the time and labor required were not out of the ordinary.

2. Novelty and difficulty of the questions involved: This factor is subsumed in the lodestar calculation. Blum, 465 U.S. at 898-99.

3. Skill requisite to perform the legal service properly: This is also reflected in the discussion of the reasonable rates charged. Successful civil rights litigation often requires specialized experience.

4. Preclusion of other employment due to acceptance of the case: The attorneys do not claim that they were substantially hindered from seeking other employment. Marrinan does state, however, that he only accepts ten percent of the approximately 20 calls per month from individuals seeking

representation for civil rights cases.

5. Customary fee: Contingent fees are customary.  The prevailing rates in the community also reflect the customary fee.

6. Whether fee is fixed or contingent: Marrinan accepted this case on a contingent-fee basis.

7. Time limitations imposed by the client or the circumstances: This factor does not apply here.

8. Amount involved and results obtained: Marrinan achieved a very successful result on summary judgment and appeal.  On the other hand, the jury verdict was only moderately successful. Plaintiff sought $250,000 in compensatory damages.  The award of $91,000 was substantial but significantly less than that sought, which in turn would have been well within the reasonable verdict range in light of some of the aggravating factors.  Thus, this factor does not weigh heavily in favor of adjusting the lodestar calculation.

9. Experience, reputation, and ability of the attorneys: Both parties were represented by very experienced trial attorneys.  This factor is also reflected in the reasonably hourly rates.

10. "Undesirability" of the case: As Marrinan, Rutman, and other attorneys stated, few attorneys undertake civil rights cases – particularly police misconduct cases.  While this factor might weigh in favor of an upward adjustment, civil rights plaintiffs could make this argument in all § 1983 cases.  Furthermore, the $430 hourly rate for Marrinan reflects the high skill level developed within a small group of trial lawyers dedicated to civil rights work.

11. Nature and length of the professional relationship with the client: Rutman had a relatively brief relationship with Plaintiff.  Marrinan had a longer relationship, due to the length of this case. Neither attorney represented Plaintiff in previous cases.

12. Award in similar cases: Plaintiff submits evidence of hourly rates awarded in six other cases.

- In re Pinnfund, USA, No. 01-03291-H11 (Bankr. S.D. Cal. award issued Jun. 4, 2003): $430 per hour to an attorney with 24 years of experience; $365 per hour to an attorney with 14 years of experience; $400 per hour to an attorney with 24 years of experience; $395 per hour to an attorney with 18 years of experience; $400 per hour to an attorney with 31 years of experience; and $385 per hour to an attorney with 17 years of

1    experience.  (Decl. of M. Marrinan, Exh. 6.)

2    •   Grassilli v. Barr, No. EC 19095 (San Diego Super. Ct. award issued 2004), aff'd, 142

3         Cal. App. 4th 1260 (2006): in a § 1983 case, awarded $350 per hour to attorney

4         Garrison with 11 years of experience.  (Decl. of G. Garrison at 2.)

5    •   In re Surebeam Corp., No. 04-00421-LA7 (Bankr. S.D. Cal. award issued Jul. 29,

6         2004): $465 per hour to an attorney with 24 years of experience, and $430 per hour to

7         an attorney with 18 years of experience.  (Decl. of M. Marrinan, Exh. 5.)

8    •   Mascari v. San Diego Gas & Elec., No. 97cv1652-W (JFS) (S.D. Cal. award issued

9         Mar. 30, 2005 and reaffirmed Aug. 26, 2005): in an ERISA case, awarded $425 per

10        hour to an attorney with 22 years of experience.  (Supp. Decl. of M. Marrinan re:

11        Exhibits, Exhs. 1-3.)

12   •   In re The Roman Catholic Bishop of San Diego, No. 07-00939-LA11 (Bankr. S.D. Cal.

13        award issued Jun. 28, 2007): $700 per hour to a constitutional law expert.  (Id., Exh.

14        5.)

15   •   In re Xelan, Inc., No. 04-05832-LA11 (Bankr. S.D. Cal. award issued Oct. 30, 2007):

16        $425 and $450 per hour to an attorney with 28 years of experience.  (Id., Exh. 4.)

17   While only one of these cases involves a § 1983 claim, the cases demonstrate that the $430 fee for

18   Marrinan and $300 fee for Rutman fall well within the range of fees awarded to attorneys with

19   comparable experience.

20        In sum, the Kerr factors weighing in favor of an upward adjustment and those weighing in

21   favor of a downward adjustment seem to be in equipoise.  The court therefore does not adjust the

22   lodestar figure based on the Kerr factors.[3]

23   _____

24        [3]Although the attorneys' fees in the aggregate substantially exceed the amount of damages
     recovered, this is not usual in civil rights cases.  See, e.g., Riverside v. Rivera, 477 U.S. 561 (1986)
25   (damages of $13,300 for federal claims, $20,050 for state claims; attorneys' fees award of
     $245,456.25); Fair Hous. of Marin v. Combs, 285 F.3d 899 (9th Cir. 2002) (damages of $98,777;
26   attorneys' fees award of $508,606.78); Romberg v. Nichols, 953 F.3d 1152 (9th Cir. 1992) (nominal
     damages of $1; attorneys' fees award of at least $29,137.50); see also Morales v. City of San Rafael,
27   96 F.3d 359, 364 n.11 (9th Cir. 1996) ("[W]e have repeatedly made it clear that the level of success
     achieved by a civil rights plaintiff should be measured by more than the amount of damages
28   awarded."); Quesada v. Thomason, 850 F.2d 537, 540 (9th Cir. 1988) ("[I]t is inappropriate for a

### 3.    Rule 68 Offer

Defendants argue that Plaintiff should not receive attorneys' fees and expenses incurred after the Rule 68 offer because the Rule 68 offer exceeded the verdict.

Federal Rule of Civil Procedure 68 "imposes a special burden on the plaintiff to whom a formal settlement offer is made." Delta Air Lines v. August, 450 U.S. 346, 352 (1981).  Under Rule 68, a plaintiff must pay the costs incurred after an unaccepted Rule 68 offer if the offer is more favorable than the judgment plaintiff ultimately obtains. Fed. R. Civ. Proc. 68(d).  To constitute a Rule 68 offer, a settlement offer must be served on the plaintiff more than ten days before trial and must "allow judgment on specified terms, with the costs then accrued."  Fed. R. Civ. Proc. 68(a). Furthermore, because service of process must comply with Rule 5(b), neither an oral offer nor an offer served by fax satisfies the requirements of Rule 68.  Magnuson v. Video Yesteryear, 85 F.3d 1424, 1429 (9th Cir. 1996) (citing Grosvenor v. Brienen, 801 F.2d 944, 948 (7th Cir. 1986)).  The court applies the usual rules of contract law to determine whether a settlement offer complies with Rule 68. Herrington v. County of Sonoma, 12 F.3d 901, 907 (9th Cir. 1993).  "These rules dictate that ambiguities be construed against the drafter."  Holland v. Roeser, 37 F.3d 501, 504 (9th Cir. 1994).

Here, Defendants issued a formal Rule 68 offer of $165,000 on February 23, 2005.  (Decl. of J. McCormick; id., Exh. A.)  The offer allocated $162,000 to Plaintiff Villegas and $3,000 to Marquez. Defendants claim in their original motion that the benchmark for Rule 68 purposes was not the February 23, 2005 offer but their March 4, 2005 verbal acceptance of Plaintiff's $185,000 settlement demand.  (Decl. of J. McCormick.)  Plaintiff argues that the $185,000 figure has no role in the Rule 68 analysis because it was not an official Rule 68 offer.  Because oral offers do not satisfy the requirements of Rule 68, Plaintiff is correct.  See Magnuson, 85 F.3d at 1429.

In their supplemental brief, Defendants also argue that a document entitled "Release of All Claims" was an official Rule 68 offer.  Deborah Garvin faxed the document to Marrinan "for review & comment" on April 8, 2005.  (Decl. of D. Garvin, Exh. B at 1.)  The release, which contains no signatures, provides that Plaintiffs would release all claims for $185,000, and that each party would

district court to reduce a fee award below the lodestar simply because the damages obtained are small.").

1   bear its own attorneys' fees and costs.  (Id. at 2-3.)  The release did not apportion the $185,000

2   between the two plaintiffs.  This document does not constitute a formal Rule 68 offer for two primary

3   reasons.  First, service of process by fax does not satisfy Rule 68.  Magnuson, 85 F.3d at 1429.

4   Second, and more importantly, the meaning of the faxed release is ambiguous.  While the terms of the

5   release are straightforward, the note "for review & comment" does not communicate clearly whether

6   the transmission is a formal offer or merely part of ongoing settlement negotiations.  See Holland, 37

7   F.3d at 504.  The court must construe such an ambiguity against Defendants.  See id.  In sum, because

8   Defendants never made a formal Rule 68 offer containing the $185,000 figure, the court considers

9   only the February 23, 2005 offer of $162,000 to Plaintiff.

10          Plaintiff ultimately received $91,000.  The court must determine whether the sum of the award

11   and Plaintiff's pre-Rule 68-offer fees and expenses exceeds $162,000.  See Marek v. Chesny, 473 U.S.

12   1, 7 (1985).  According to the billing records, Rutman had billed 19.3 compensable hours[4] and

13   Marrinan 170 hours as of that date.  At the rate of $430 per hour, fees for Marrinan would have been

14   $73,100.  At the rate of $300 per hour, fees for Rutman would have been $5,790.  Thus, the total fees

15   would have been $78,890.  Plaintiff identifies $3,938 in costs, as reflected in the Bill of Costs, and the

16   court identifies $3,360.07 in additional compensable litigation expenses,[5] totalling $7,298.07.  The

17   sum of total fees and expenses and the $91,000 award is $177,188.07.  This exceeds the Rule 68

18   offer.[6]

19          Defendants also claim that the court should determine whether the recovery exceeded the Rule

20   68 offer based upon a compensatory award of $60,000 at trial.  They reach this conclusion in light of

21   ────────────────

22          [4]Although Rutman's billing records indicate that he had billed 66.8 hours, the court has reduced Rutman's hours to 19.3, as discussed above.

23          [5]$3,360.07 reflects the $6,346 in pre-Rule 68-offer expenses identified by Plaintiff, reduced

24   by $2,985.93 in non-reimbursable litigation expenses requested by Rutman.  The court addresses this reduction below.

25          [6]The result would not differ if the April 4, 2005 faxed release constituted a Rule 68 offer.

26   Using the April 4, 2005 offer of $185,000 as a benchmark, the court should award post-Rule 68-offer fees and expenses only if the pre-Rule 68-offer fees and expenses were greater than $94,000

27   ($185,000 minus $91,000).  Marrinan billed an additional 32.1 hours from February 24, 2005 through the date of the release.  (See Marrinan Decl., Exh. 1.)  At the rate of $430 per hour, Marrinan incurred

28   $13,803 in additional fees between February 23, 2005 and April 4, 2005.  Thus, the total fees would have been $92,693.  Plaintiff also incurred at least $7,298.07 in costs and expenses, as discussed above, in addition to those incurred between February 24, 2005 and April 4, 2005.  Total fees and expenses would have been at least $99,991.07.  Thus, the final award exceeds the April 4, 2005 offer.

Deborah Garvin's alleged post-trial interview of jurors.  Garvin claims the foreperson told her that the $91,000 award "took into consideration that [Plaintiff] would have to pay his attorney fees out of the money he received."  (Decl. of D. Garvin at 4.)  This evidence is clearly inadmissible.  See Fed. R. Evid. 606(b) ("Upon an inquiry into the validity of a verdict . . . a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions . . . .").  Accordingly, the court rejects this argument.

In sum, the court denies Defendants' request to award fees and expenses only through the date of the Rule 68 offer.

### C.    Litigation Expenses

Plaintiff seeks reimbursement for $10,749 in litigation expenses.  He states that he did not claim these expenses as costs under 28 U.S.C. § 1920.

Based on Plaintiff's receipts and invoices, most of the claimed expenses are reasonable.  (See Decl. of M. Marrinan, Exhs. 8, 9.)  The court reduces only those expenses incurred by Rutman. Because Rutman shall receive attorneys' fees only for work performed up to and including October 29, 2003, he likewise shall receive reimbursement only for expenses occurred during the same period of time.  According to the receipts submitted by Plaintiff, Rutman's compensable litigation expenses amount to $249.10.  His non-reimbursable litigation expenses amount to $2,985.93.

Defendants take issue with three litigation expenses.  First, they claim that only 1.2 of the six hours charged by expert Jack Smith for "Consultation" in a November 1, 2004 invoice is reasonable. They point to Marrinan's billing record, which lists 1.1 hours for a meeting with Smith on October 8, 2004.  Plaintiff responds that Smith's invoice is limited neither to one meeting with Marrinan on October 8, 2004, nor to consultation with Marrinan.  In fact, the invoice states only "Consultation" and does not describe the individuals with whom Smith consulted.  The court finds all six hours to be reasonable.

Second, Defendants claim that the $900 charged by Diane F. Wyzga for jury consultation regarding opening statements and exhibits is unreasonable because Marrinan is an experienced attorney and does not need a jury consultant.  Third, Defendants make the same argument in regard to the $414.92 spent on a focus group.  Plaintiff responds that jury consultants and focus groups are common, regardless of trial counsel's level of experience.  Plaintiff also states that Wyzga has an R.N.

1   degree and is a lawyer.  The court finds Plaintiff's arguments persuasive and grants the full amount

2   for both Wyzga and the focus group.

3   **III.      CONCLUSION**

4          For the reasons set forth above, the court grants the motion for fees and expenses and awards

5   the following:

6          1. $280,446 in attorneys' fees (652.2 hours at $430 per hour) and $7,513.97 in litigation

7   expenses to Marrinan.

8          2. $5,790 in attorneys' fees (19.3 hours at $300 per hour) and $249.10 in litigation expenses

9   to Rutman.

10          **IT IS SO ORDERED.**

11   **DATED:  June 24, 2008**

12                                                        _____

13                                                        **Hon. Jeffrey T. Miller**
                                                         **United States District Judge**

14   cc:          All parties

15

16

17

18

19

20

21

22

23

24

25

26

27

28